UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **JOHN LEONARD FLOYD TRIM** | **CIVIL ACTION NO. 22-0521** |
| | **SECTION P** |
| VS. | |
| | **JUDGE TERRY A. DOUGHTY** |
| **BOSSIER PARISH SHERIFF'S OFFICE, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff John Leonard Floyd Trim, a prisoner at Bossier Medium Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately February 18, 2022, under 42 U.S.C. § 1983. He names the following defendants: Sheriff Jullian Whittington, Captain Linton Jacobs,[1] Lieutenant Antonio Evans,[2] and Bossier Parish Sheriff's Office.[3] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

In his initial pleading, Plaintiff alleges that on October 8, 2021, at Bossier Maximum Correctional Center ("BMCC"), he was informed that he contracted a virus, Covid-19. [doc. # 1, p. 3]. Plaintiff claims that he contracted Covid-19 because BMCC did not follow proper procedure. *Id.*

In an amended pleading, Plaintiff alleges that staff members at BMCC removed another

---

[1] Plaintiff also refers to Captain Jacobs as Warden Jacobs. [doc. # 5, p. 3].

[2] Plaintiff also refers to Lieutenant Evans as Assistant Warden Evans. *Id.*

[3] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

inmate, Inmate Smith, from Plaintiff's dormitory, "D-Dorm," in September 2021, because of a disciplinary infraction. [doc. # 5, p. 1]. Smith "was transferred to E-dorm," where officials quarantined inmates who tested positive for Covid-19. *Id.*

Plaintiff claims that "Smith was negligently returned to" D-Dorm[4] before Smith received the results of his Covid-19 test. *Id.* Plaintiff alleges that he contracted Covid-19 from Smith because he was "in direct contact with Inmate Smith" for three days when Smith returned to D-Dorm. *Id.* at 2. Plaintiff and Smith were "housed on the same tier of the housing unit . . . ." *Id.* Officials waited three days after Smith returned to D-Dorm before (1) notifying Smith that he contracted Covid-19 and (2) isolating Smith. *Id.* "On or around" September 27, 2021, Plaintiff "began to experience some of the harsh symptoms associated with the virus such as a sudden [and] progressive cough, constant headaches, loss of appetite, nausea, insomnia, [and] intensely sharp chest pains that frequently occurred when [he] would attempt to lay on [his] back." *Id.*

Plaintiff alleges that on approximately October 5, 2021, the Bossier Parish Sheriff's Office tested "the entire dorm" for Covid-19 because of Smith's positive test. *Id.* On approximately October 8, 2021, Plaintiff was isolated from other inmates because he tested positive for Covid-19. *Id.*

Plaintiff claims that "staff members, operating under the scope [and] administrative authority of" defendants, negligently refused:

> to comply with state, federal, [and] local laws governing mandatory Covid-19 prevention [and] management protocols by:
>
> > A). Rehousing Inmate Smith, a potential Covid-19 courier [sic], back into general population [without] first receiving the official results of his Covid-19 testing.

---

[4] Plaintiff appears to also refer to D-Dorm as "D-pod." *Id.*

> B). Negligently subjecting [Plaintiff] to a high risk of exposure to the infectious Covid-19 virus while being fully aware of the potential bodily harm associated with exposure.

*Id.* at 3.  Plaintiff adds that defendants (1) violated his rights under the First, Eighth, and Fourteenth Amendments and (2) committed malfeasance of office, non-feasance, and deliberate medical indifference by:

> A). Non-compliance with state [and] federal Covid-19 mandates [and] protocols that were in place to help protect individuals from the spread of the deadly virus.
>
> B). Not treating [Plaintiff] for the harsh physical symptoms that [he] suffered from as a direct result of their negligent actions.

*Id.* at 3-4.

Plaintiff seeks $500,000.00 for his pain, suffering, mental distress, and emotional distress. [doc. #s 1, p. 4; 5, p. 4]. He also seeks punitive damages and "all such further relief which is required by law." *Id.*

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is

---

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was

deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[6] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[7] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff does not plausibly allege that any defendant was deliberately indifferent to his health or the risk of Covid-19. Rather, Plaintiff explicitly characterizes defendants' (or their

---

[6] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

[7] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

staff's) actions as negligence. [doc. # 5, p. 3]. "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 459 (5th Cir. 2001).

Plaintiff does state that defendants "knowingly [and] willingly" caused him "foreseeable bodily harm [and] damages . . . ." [doc. # 5, p. 3]. However, these legal labels, conclusions, or 'formulaic recitations of the elements of a cause of action' do not control and do not satisfy Rule 8 of the Federal Rules of Civil Procedure.[8] Considering instead Plaintiff's well-pled allegations, he describes (at best) forms of negligence. Plaintiff does not, for example, allege that any defendant knew Inmate Smith contracted Covid-19 and was deliberately indifferent in exposing Plaintiff to Smith. Rather, Plaintiff states that staff returned Smith to D-Dorm before Smith received his test results, essentially claiming that defendants should have known that Smith potentially contracted Covid-19 and should have taken precautions to avoid exposing other inmates to Smith.[9] [doc. # 5, p. 2].

Plaintiff alleges that defendants failed to comply with unidentified protocols for preventing or managing the spread of Covid-19. *Id.* at 3. To the extent Plaintiff claims that the defendants violated regulations, he does not state a viable claim. A Section 1983 claim may not "be brought to enforce an administrative regulation . . . ." *Thurman v. Med. Transportation*

---

[8] *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("Stripped of its conclusory allegations and the technical buzz words liberally sprinkled throughout, the plaintiff's pleadings allege, at best, a negligence action.").

[9] *See McCray v. McKellar*, 789 F. App'x 454, 456 (5th Cir. 2020) (finding no deliberate indifference where a plaintiff alleged that "defendants should have been aware" of a danger and "would have been aware of same had they conducted adequate investigation . . . ."); *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (finding that the following questions about Covid-19 in a prison sounded in negligence only: "whether [the Defendants] reasonably abate[d] the risk' of infection . . . [or] 'whether and how [TDCJ's] policy is being administered[.]'").

*Mgmt., Inc.*, 982 F.3d 953, 957 (5th Cir. 2020), *cert. denied,* 142 S. Ct. 358 (2021). "[A]gency regulations cannot independently confer federal rights enforceable under § 1983 for one simple reason: . . . it is Congress, and not an agency of the Executive Branch, that creates federal rights." *Id.*

Moreover, the violation of a safety or health code would only be "instructive in certain cases," would only establish recommended goals, and would "not establish the constitutional minima . . . ." *Bell v. Wolfish*, 441 U.S. 520, n. 27 (1979); *see Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. Nor is it bound by the standards set by the safety codes of private organizations. Standards suggested by experts are merely advisory. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure.").

The Court should dismiss Plaintiff's conditions-of-confinement claims.[10]

## 3. Medical Care

Plaintiff did not mention a deprivation of medical care in his initial pleading. [doc. # 1]. Following his initial pleading, the undersigned instructed Plaintiff to, among other things: (1) clarify the entities and/or persons he is naming as defendants; (2) provide a separate description of what, exactly, each defendant did to violate his rights; and (3) provide any information to establish that a defendant knew of a substantial risk of serious harm and deliberately disregarded or ignored that risk. [doc. # 5].

In his second pleading, Plaintiff briefly alleges that defendants violated his constitutional rights and committed malfeasance of office, non-feasance, and deliberate medical indifference

---

[10] Plaintiff may, if he wishes, pursue his negligence claims in state court.

by failing to treat him "for the harsh physical symptoms that [he] suffered from as a direct result of their negligent actions." [doc. # 5, pp. 3-4].

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Plaintiff's allegations are conclusory. He fails to identify a specific defendant(s) who failed to treat him, failed to arrange treatment, or impeded treatment. He does not allege that any defendant knew of and disregarded a substantial risk of serious harm.[11] He does not, for instance, specify when or if he requested care, the specific needs for which he requested care, what he told a defendant(s), what a defendant(s) told him, or how a defendant failed to treat him or otherwise acted negligently.

In addition, Plaintiff states perfunctorily that defendants were negligent. As above, allegations of negligence do not state claims of constitutional dimension. *Daniels v. Williams*, 474 U.S. 327, 336 (1986) (holding that the United States Constitution does not address injuries inflicted by governmental negligence); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (recognizing that plaintiffs must "demonstrate culpability beyond mere negligence or even gross negligence.").

---

[11] A "plaintiff must prove 'objective exposure to a substantial risk of serious harm' —that is, the existence of a serious medical need; the official's subjective knowledge of his substantial risk; and the official 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Rombach v. Culpepper*, No. 20-30554, 2021 WL 2944809, at *4 (5th Cir. July 13, 2021) (internal quotation marks and quoted sources omitted).

The Court should dismiss these claims.[12]

**4. Supervisory Liability**

Even assuming Plaintiff stated plausible claims against officers at BMCC or members of the staff at BMCC, he does not plausibly allege that any defendant was sufficiently involved in depriving him of health or safety.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not plausibly allege that any defendant affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between any defendant's conduct and any alleged constitutional violation.[13] Rather, he faults

---

[12] Again, Plaintiff may pursue his negligence claims in state court.

[13] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

10

"staff members" and "officers" who allegedly "operated under the scope [and] administrative authority of" defendants. [doc. # 5, pp. 1-3]. Effectively, Plaintiff pleads only vicarious liability. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").[14]

Further, Plaintiff does not allege that any defendant implemented an unconstitutional policy, practice, custom, or procedure that deprived him of constitutionally adequate conditions of confinement or medical care.

The Court should dismiss Plaintiff's claims.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff John Leonard Floyd Trim's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

---

[14] Plaintiff alleges that defendants committed "malfeasance of office" and "non-feasance[.]" However, "A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances or negligences or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties." *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888) (*quoted with approval by Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

**(14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 12th day of April, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge